**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

-vs-                                        Case No. 6:05-cv-916-Orl-31KRS

**FUNDS DESCRIBED IN "ATTACHMENT**        6:05-cv-1326-Orl-31KRS
**A" TO THE COMPLAINT FOR**                    6:05-cv-1670-Orl-31KRS
**FORFEITURE IN REM, et al.**                      6:06-cv-76-Orl-31JGG
                                                              (Consolidated)

        **Defendants.**

## ORDER

This matter comes before the Court on the Motion to Quash Warrant of Arrest in Rem (Doc. 111) filed by Jive Network, Inc.[1] ("Jive") and the Plaintiff's Response thereto (Doc. 115).

**I. Background**

Approximately two years ago the federal government executed seizure warrants on funds held in various financial institutions in the names of Jive, Jude Lacour, Jive Network Commissions, Lacour Medical, Inc., and Jeff Lacour Enterprises. (Doc. 6 at 1). The government filed an amended verified complaint for forfeiture *in rem* on June 24, 2005. (Doc. 6 at 1). The government alleged that the funds were derived from illegal sales of pharmaceuticals over the

---

[1] The Motion to Quash was also filed by Jude Lacour; however, for simplicity's sake, the remainder of this order will refer to the movants collectively as "Jive".

Internet[2] (Doc. 112 at 2) and therefore were subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6)[3] and 18 U.S.C. § 981(a)(1)(A).[4]  (Doc. 6 at 1-2).  All of the accounts were located in Florida except one entitled "Bank of N.T. Butterfield & Son Limited account no. XXXXX1256 in the name of Jive Network, Inc." ("the Butterfield Account"), which was located in Hamilton, Bermuda. (Doc. 112 at 3).

On March 16, 2007, the government filed an application for issuance of summons and warrant of arrest *in rem* for the Butterfield Account.  (Doc. 112 at 3). To establish probable cause for issuance of a warrant, the government attached an affidavit from an FBI case agent.  (Doc. 112 at 3).  According to the affidavit, in August of 2006, the agent was contacted by a Special Constable in Bermuda, who had learned from bank officials about the alleged criminal activity related to the Butterfield Account.  (Doc. 112-3 at 8).  The Special Constable then used information provided by the FBI agent to obtain a Restraint Order from the Bermuda Supreme Court.  (Doc. 112-3 at 9).  The Restraint Order, which remains in effect, prohibited disposal of the assets in the Butterfield Account.  (Doc. 112 at 3).  That same day, Magistrate Judge Spaulding granted the application and permitted issuance of the summons and warrant of arrest *in rem*.  (Doc. 107).

---

[2]The case has been stayed since January 2006. On June 25, 2007, the government notified the Court that the criminal investigation is continuing. (Doc. 119).

[3]21 U.S.C. § 881 provides for, among other things, the forfeiture of all proceeds of the sale of controlled substances and property used to facilitate such sales.

[4]18 U.S.C. § 981 provides for, among other things, the forfeiture of any property, real or personal, involved in a violation of 18 U.S.C. § 1957, which prohibits engaging in monetary transactions with property derived from specified unlawful activity.

On April 13, 2007 Jive filed a motion to quash the warrant of arrest *in rem*, claiming the government had failed to demonstrate (1) that it could effectuate service of process on the res; (2) that it could obtain actual or constructive control of the res; and (3) that any judgment entered by this court would be enforceable against the res.  (Doc. 111).

**II. Standard of Review**

Subsection (b) of 28 U.S.C. § 636 permits a district judge to refer non-dispositive pretrial matters to a magistrate judge for judgment.  *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 354 (5th Cir. 1980).[5]  Pretrial orders of a magistrate judge will be upheld unless they are clearly erroneous and contrary to law.  28 U.S.C. § 636(b)(1)(A); *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1016-1017 (5th Cir. 1981).

**III. Legal Analysis**

   *A) Service of Process*

Civil forfeiture actions *in rem* arising under federal law are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Subsection 3 of Supplemental Rule G addresses *in rem* process in a civil forfeiture action:

> If executing a warrant on property outside the United States is required, the warrant may be transmitted to an appropriate authority for serving process where the property is located.

Supplemental Rule G(3)(c)(iv).

Jive first argues that the requirements of Supplemental Rule G have not been met because there is no indication that the Bermuda government will "recognize the validity of the arrest

---

[5]On November 3, 1981, the United States Court of Appeals for the Eleventh Circuit adopted as precedent all decisions of the Fifth Circuit issued prior to October 1, 1981.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

warrant." (Doc. 112 at 6-7). However, this is not a legitimate basis for denying issuance of the warrant. The advisory committee's notes on Supplemental Rule G[6] note the "uncertainty surrounding service of an arrest warrant on property not in the United States" and that "transmission of the warrant to an appropriate authority . . . does not ensure that the warrant will be executed." However, the advisory committee emphasized that Supplemental Rule G *only* "requires that the warrant be transmitted to an appropriate authority." *Id.* Nothing in the text of Supplemental Rule G requires this Court to determine ahead of time that the Bermuda government will execute the warrant.

*B) Actual or Constructive Control*

Prior to 1992, the statute that establishes federal jurisdiction over civil forfeiture actions, 28 U.S.C. § 1355, only provided district courts with subject matter jurisdiction over forfeiture proceedings commenced pursuant to the laws of the United States. *See U.S. v. All Funds Deposited in Any Accounts Maintained in the Names of Meza or Castro,* 63 F.3d 148, 151 (2d Cir. 1995). Section 1355 also did not allow the district court to issue process against property located outside its district. *Id.* In response to these limits, Congress amended Section 1355 in 1992. *Id.* Specifically, Congress added Section 1355(b), which specifies the proper venue for forfeiture proceedings against property located both inside and outside the U.S.:

> (b)(1) A forfeiture action or proceeding may be brought in–
>    (A) the district court for the district in which any of the acts or omissions
>    giving rise to the forfeiture occurred, or

---

[6]The interpretations contained within advisory committee notes "are nearly universally accorded great weight in interpreting the federal rules." *Horenkamp v. Van Winkle and Company, Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005).

> (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
> (2) Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided by paragraph (1), or in the United States District [C]ourt for the District of Columbia.

To permit a district court to effect service outside its district, Congress enacted Section 1355(d), which provides:

> (d) Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.

Section 1355 was not applied to property located outside the United States until 1995. *Meza*, 63 F.3d at 148. In *Meza*, the Second Circuit held that in amending Section 1355, Congress did not intend to "fundamentally alter well-settled law regarding *in rem* jurisdiction." *Id.* at 152. Traditionally, in order to have *in rem* jurisdiction, a court must have actual or constructive control over the property. *See U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 57-58 (1993). The *Meza* court held that "[a]bsent any degree of control over property located in a foreign country . . . a district court's forfeiture order directed against such property would be wholly unenforceable." *Meza*, 63 F.3d at 152. As a result, the court construed Section 1355(b)(2) to require a district court to have actual or constructive control over property located in a foreign country in order to initiate a civil forfeiture proceeding against the property. *Id.* at 153.

The *Meza* court found that "demonstrated cooperation" by the United Kingdom government showed that the district court possessed constructive control of the funds at issue in that case. *Id.* The High Court in the United Kingdom had restrained the funds at issue, had served

copies of forfeiture complaints regarding those funds, and had issued an order continuing the enforcement of the original restraining order, all at the request of the U.S. government. *Id.* The court held that the United Kingdom acted essentially as an agent of the United States for purposes of the forfeiture action, and therefore the U.S. government had constructive control over the funds. *Id.* at 154.

Relying on *Meza*, Jive argues that the instant warrant of arrest *in rem* should be quashed because the Court has neither actual nor constructive control of the Butterfield Account. (Doc. 112 at 9-10). However, the Court finds that the record contains evidence of "demonstrated cooperation" by the Bermuda government sufficient to give rise to the necessary constructive control over the Butterfield Account. For example, Bermuda issued an order restraining the Butterfield Account, solely based on information provided by the U.S., and it did so without a request by the U.S. government. (Doc. 115-2 at 2). Thus, the Court concludes that the *Meza* standard has been met and that Jive's argument is, therefore, without merit.[7]

*C) Justiciability*

Article III of the U.S. Constitution requires that it must be likely, as opposed to merely speculative, that the injury claimed by the plaintiff will be redressed by a favorable decision by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Absent such a showing by

---

[7]The Court recognizes that other circuits have held that Section 1355 grants jurisdiction to issue an arrest warrant *in rem* regarding assets located in a foreign country regardless of the cooperation of the foreign government. *See, e.g., U.S. v. All Funds in Account Nos. 747.034/278, et. al at Banco Espanol De Credito, Spain,* 295 F.3d 23 (D.C. Cir. 2002); *Contents of Account Number 03001288, Held in the Name of Tasneem Jalal, et. al. v. U.S.*, 344 F.3d 399 (3d Cir. 2003). However, because the Court concludes that the government prevails under *Meza*, it is not necessary to decide which line of cases represents the better view.

the plaintiff, "exercise of power by the federal court would be gratuitous and thus inconsistent with the Article III limitation." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38 (1978). In the instant action, Jive contends that the government has not made a sufficient showing that the Bermuda government would enforce the warrant of arrest *in rem*, and therefore this Court lacks constitutional authority to issue it. (Doc. 118 at 8-9). However, Jive does not provide any case law in which a court has declined to issue a warrant of arrest *in rem* due to justiciability concerns. Moreover, Bermuda's cooperation thus far suggests that the warrant will be enforced. Accordingly the Court finds that the government has shown that it is likely that the warrant of arrest *in rem* would be more than just a gratuitous, advisory opinion, and therefore the Court has the constitutional authority to issue it.

**IV. Conclusion**

Accordingly it is **ORDERED** that the Motion to Quash the Warrant of Arrest In Rem (Doc. 111) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 27, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party